```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

Citizens for Tax Reform, *et al.*,      )
                                        )
                Plaintiffs,     )   Case No. 1:05-CV-212
                                        )
    vs.                                 )
                                        )
Joseph T. Deters, *et al.*,             )
                                        )
                Defendants.     )

Temporary Restraining Order

Citizens for Tax Reform wishes to circulate an initiative petition for the purpose of placing a proposed amendment to the Ohio Constitution on the November 2005. Prior to March 31, 2005, Plaintiffs had engaged Arno Political Consultants ("Arno"), a California-based political consulting firm that specializes in collecting signatures for initiative and referendum efforts, to collect signatures on their initiative petitions through the use of circulators paid on a per-signature basis. When Plaintiffs entered into their agreement with Arno the use of paid circulators was legal in the State of Ohio. On March 31, 2005, however, Ohio Revised Code ("O.R.C.") § 3599.111, which prohibits the use of circulators paid on a per-signature basis, became effective. Plaintiffs then initiated this action, alleging that the newly effective statute violates rights guaranteed to them by the First and Fourteenth Amendments to the United States Constitution. They simultaneously filed the motion

for temporary restraining order that is presently before the Court.

The parties agree that the ostensible purpose of the challenged statute is the prevention of fraud in the process of collecting signatures on political petitions, including initiative petitions. The Ohio General Assembly passed the statute as a reform to Ohio's initiative and referendum process in response to extensive fraud in the collection of signatures on petitions supporting the placement of Ralph Nader's name on the Ohio ballot for President of the United States in November 2004. Some or all of that fraud was perpetrated by petition circulators who were paid on a per-signature basis.

Defendants herein, including the Intervenor-Defendant, Ohio Attorney General James Petro as representative of the State of Ohio, have not introduced evidence or otherwise suggested that professional circulators paid on any basis other than per signature were involved in the circulation of petitions favoring the addition of Mr. Nader to the Ohio presidential ballot. In other words, the State has not attempted to demonstrate, by means other than supposition, that the method of calculating the pay of the paid circulators was the cause of the fraud. The State has argued that reason supports its position that the incentive to commit fraud is greater when payment is made on a per signature, rather than a per hour or other time incremental, basis.

The State acknowledges that the General Assembly could not have acted to prohibit all circulation of petitions in Ohio by paid circulators. The United States Supreme Court declared in 1988 that a Colorado statute that prohibited payment to petition circulators was an infringement of rights of political speech guaranteed by the First Amendment. See Meyer v. Grant, 486 U.S. 414, 422-23 (1988). The Court held that the prohibition restricted political speech by limiting "the number of voices who will convey [the political] message and the hours they can speak and, therefore, limits the size of the audience they can reach." Id. The Court identified a second manner in which the prohibition restricted core political speech, which, the Court stated, includes the circulation of petitions: "it makes it less likely that [the proponents of the amendment] will garner the number of signatures necessary to place the matter on the ballot, thus limiting their ability to make the matter the focus of statewide discussion." Id. at 423.

The Supreme Court did not invalidate all restrictions on core political speech in the form of the circulation of petitions; although, it did explicitly recognize that the First Amendment protects amendment proponents' "right not only to advocate their cause but also to select what they believe to be the most effective means for so doing." Id. at 424. The Court considered the State of Colorado's expressed justifications for

the restriction of a protected right, including the protection of the integrity of the initiative process.  See id. at 425.  The Court concluded, however, that Colorado had "failed to demonstrate that it is necessary to burden [the amendment proponents'] ability to communicate their message in order to meet its concerns."  Id. at 426.  The Court noted the lack of evidence in support of the State's theory that the prohibition was necessary to eliminate the temptation to "accept false signatures" and stated that it was unprepared to assume that a professional circulator "whose qualifications for similar future assignments may well depend on a reputation for competence and integrity" is more likely to accept false signatures than a volunteer.  Id.

The Meyer court expressed that it was persuaded by the presence in the Colorado statutes of criminal penalties for forging a signature on a petition, making false or misleading statements relating to a petition, or paying someone to sign a petition.  See id. at 427.  The Court noted that those "provisions seem adequate to the task of minimizing the risk of improper conduct in the circulation of a petition."  Id.  The State of Colorado had, apparently, not attempted to demonstrate that it had prosecuted or investigated offenses of the criminal statutes and yet failed to curtail fraud in the petition process.  So, the Court recognized the theoretical possibility that a

4

governmental interest might compel a restriction on the right to circulate a petition, but it did so while affirming that the area is one in which the protection of the First Amendment is "at its zenith" so that the burden a state must overcome to justify a restriction is "well-nigh insurmountable." Id. at 425.

Since the Meyer decision, various federal courts have considered state statutes prohibiting the payment of petition circulators on a per signature basis. In LIMIT v. Maleng, 874 F.Supp. 1138 (W.D. Wash. 1994), for example, the Court concluded that a Washington statute prohibiting the use of circulators paid per signature was not justified by actual evidence that that method of payment increased the incidence of fraud. The court observed that actual evidence was required in the context of constitutional challenges to legislation restricting expenditures in ballot referenda and initiative campaigns. See id. at 1141 (citing Citizens Against Rent Control v. Berkeley, 454 U.S. 290 (1981)). The Court struck down the Washington statute. See id. at 1142.

A Maine district court struck down a similar Maine statute for the same reason. See On Our Terms '97 PAC v. Secretary of State, 101 F.Supp.2d 19 (D.Me. 1999). The court observed that the state had offered "no evidence whatsoever that fraud is more pervasive among circulators paid per signature." Id. at 26. The court specifically rejected that state's

5

"supposition" that payment may affect the incidence of fraud, noting that a state must establish that "its regulation is narrowly tailored to meet a compelling need." Id. at 25 (citing Meyer, 486 U.S. at 426).

A third district court, sitting in Mississippi, invalidated a similar Mississippi statute on the same basis. See Term Limits Leadership Council, Inc. v. Clark, 984 F.Supp. 470 (S.D. Miss. 1997). The court noted that Mississippi could not "avoid strict scrutiny of the statute[], which is to say, it cannot avoid its burden to justify that statute[] by demonstrating a compelling interest and showing further that the statute[ is] the least restrictive means of addressing the state's interest." Id. at 473 (citing Meyer, 486 U.S. at 424). The court observed that Mississippi's effort to justify the statute by supposition "flies directly in the face of Supreme Court's refusal in *Meyer* to assume that paid petition circulators were more likely to commit fraud than volunteers." Id. at 473 n.3.

In the Mississippi case, the state had argued, as Ohio has in this matter, "that paying circulators on a per-signature basis encourages fraud by those circulators since it gives them incentive to obtain signatures by any possible means, including fraud." Id. at 474. The court concluded that that hypothesis, however rooted in logic or expert opinion, did not "tend to prove

what the State must prove, namely, actual fraud or threat to citizens' confidence in government posed by . . . circulators who are paid per signature." Id. at 475. The court reiterated that the Meyer court had identified the state's burden as showing "that paid circulators were actually more likely to commit fraud" and held the State of Mississippi to the same burden as regards circulators paid on a per-signature basis. Id. Finding "no proof to support such a finding," the court invalidated the Mississippi statute. Id.

The factors the Court considers in determining whether to issue a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure are as follows:

(1) whether the plaintiff has shown a likelihood that it will succeed on the merits of its claims;
(2) whether the plaintiff will suffer irreparable harm if the temporary restraining order does not issue;
(3) the probability that granting the temporary restraining order will cause substantial harm to third parties; and
(4) whether the public interest is advanced by the issuance of the temporary restraining order.

See Washington v. Reno, 35 F.3d 1093, 1099 (6th Cir. 1994)(citing Keweenaw Bay Indian Community v. Michigan, 11 F.3d 1341, 1348

(6th Cir. 1993)). Those four considerations are "factors to be balanced, not prerequisites that must be met." In re DeLorean Motor Co., 755 F.2d 1223, 1229 (6th Cir. 1985). The degree of likelihood of success on the merits required to support the issuance of a temporary restraining order may, therefore, depends on the strength of the other factors considered. See Washington, 35 F.3d at 1099 (citing DeLorean, supra).

    The Court is persuaded that Plaintiffs' likelihood of success on the merits of their claim, under the First Amendment, that O.R.C. § 3599.111 impermissibly infringes upon their core political speech rights is very high. While the parties disagree as to the quality of proof that each must offer at this stage of these proceedings, the Court is persuaded that Plaintiffs' burden is to assert that the restriction on payment of petition circulators on a per-signature basis will "burden their ability to collect signatures." Initiative & Referendum Institute v. Jaeger, 241 F.3d 614, 618 (8th Cir. 2001). Plaintiffs may have been required to adduce actual evidence of such a burdening effect had the State introduced evidence in support of its supposition that payment on a per-signature basis causes, or increases the incidence of, fraud. See id. Absent such evidence from the State, assertions that the restriction burdens core political speech are sufficient. See id.

In either case, Plaintiffs have satisfied their burden. They have introduced actual evidence that tends to show that the restriction on payment of petition circulators on a per-signature basis limits their ability to retain effective circulators and reduces the likelihood that they will succeed in placing their initiative on the November 2005 ballot. The State of Ohio, on the other hand, has failed to adduce evidence of the necessity of the statute to prevent fraud in the initiative process. While evidence identified by the State demonstrates that fraud has occurred in the context of circulation of petitions by circulators paid on a per-signature basis, it has not isolated the method of payment as the cause of, or an incentive to, the fraud.

In the Ralph Nader petition matter, circulators were not, apparently, paid on any basis other than per signature. Accordingly, the State is unable to rely upon evidence generated in the context of its investigation of that matter to prove that compensation on a per-signature basis generates fraud at a greater rate than other forms of compensation. Its argument to that effect is mere supposition and insufficient to defeat Plaintiffs' assertions in the opinions of all of the courts that have considered the matter, including the Eighth Circuit Court of Appeals, upon whose decision in <u>Jaeger</u>, <u>supra</u>, the State of Ohio relies primarily.

The harm to the Plaintiffs that would result from this Court's refusal to grant the requested temporary equitable relief is the impairment of a First Amendment right.  Such an impairment, even for a short period of time, is irreparable harm. See, e.g., Connection Distributing Co. v. Reno, 154 F.3d 281, 288 (6th Cir. 1998)(citing Elrod v. Burns, 427 U.S. 347 (1976) (plurality); Newsom v. Norris, 888 F.2d 371, 378 (6th Cir. 1989)), cert. denied, 526 U.S. 1087 (1999).  Thus, to the extent that Plaintiffs have established a likelihood of success on the merits of their First Amendment claim, they have also established the possibility of irreparable harm as a result of the impairment of their core political speech rights.  See Connection Distributing, 154 F.3d at 288 (citing Dayton Area Visually Impaired Persons, Inc. v. Fisher, 70 F.3d 1474, 1490 (6th Cir. 1995), cert. denied, 517 U.S. 1135 (1996)).

The State has argued that any harm to Plaintiffs is merely economic, inasmuch as the collection of signatures on their initiative petitions may be more costly in light of the restriction embodied in O.R.C. § 3599.111.  That argument ignores Plaintiffs' assertion that they are less likely to succeed in placing their initiative on the ballot if they are prohibited from paying circulators on a per-signature basis.  The Supreme Court in Meyer concluded that a restriction on speech that "makes it less likely" that a petition drive will be successful burdens

10

a right protected by the First Amendment. See Meyer, 486 U.S. at 423. The potential harm to Plaintiffs, therefore, is the loss or impairment of a Constitutional right, not merely an economic injury.

The State and the other Defendants have failed to identify a harm that will befall third parties in the event that the Court issues the requested temporary restraining order. The Court perceives none.

Finally, the preservation and defense of constitutional rights is always in the public interest. See, e.g., G & V Lounge, Inc. v. Michigan Liquor Control Commission, 23 F.3d 1071, 1079 (6th Cir. 1994)(citing Gannett Co., Inc. v. DePasquale, 443 U.S. 368, 383 (1979); Planned Parenthood Association v. Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987)). The Court concludes, therefore, that each of the relevant factors favors the issuance of the requested temporary restraining order in this case.

For those reasons, the Court hereby **ENJOINS** the Defendants from enforcing O.R.C. § 3599.111 pending further order of this Court or the United States Court of Appeals. The Court will not require payment of bond. The Court will conduct a

hearing on Plaintiffs' motion for a preliminary injunction on May 6, 2005, beginning at 9:00 a.m.

**IT IS SO ORDERED.**

                                                    /s/
Sandra S. Beckwith, Chief Judge
United States District Court